991 P.2d 986 (1999)
128 N.M. 242
1999-NMCA-125
In the Matter of the Termination of Parental Rights of a Child, VERNON R.V.,
Elizabeth V., Petitioner-Appellant.
No. 19,658.
Court of Appeals of New Mexico.
August 31, 1999.
Nancy L. Simmons, Albuquerque, for Appellant.

OPINION
PICKARD, Chief Judge.
{1} This case concerns the extent to which New Mexico may exert, or needs to have, personal jurisdiction in termination of parental rights proceedings over a parent who has never had any connection with the State. Elizabeth V. (Mother), the biological mother of Vernon V. (Child), filed a petition to terminate the parental rights of Henry de la Pena (Father), the biological father of Child, on grounds of abandonment. Father has resided in the Phillippines at all times material to this case. Mother and Child moved from the Phillippines to the United States in 1995. Mother appeals the trial court's dismissal of the case for want of jurisdiction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
{2} Because Father has not participated in this case to date, we recite the relevant facts as presented by Mother in the trial court. Child was conceived in the Phillippines and born there on May 25, 1994. The only contact Father has had with Child was during his first two or three days of life while Mother and Child were in the hospital. Mother and Child then moved to Manila, Phillippines, until they received permission to enter the United States in 1995. They have lived in Farmington, New Mexico, since October 1995.
{3} After Mother and Child's arrival in Farmington, Child suffered severe brain damage, allegedly as a result of medical malpractice. As a consequence, he requires constant attention and medical care. Mother and her extended family have been caring for Child. Father's only acknowledgment of Child came in response to an attorney's letter *987 informing Father of the malpractice and demanding either support for Child or a termination of parental rights. In his letter, Father indicated that he did not intend to financially support Child.
{4} Mother filed a petition to terminate Father's parental rights. No adoption petition was pending at the time of filing. Father was personally served notice of the termination proceedings in the Phillippines. He did not respond to the notice. After a hearing on the matter, the trial court acknowledged that Mother had made a prima facie showing of abandonment, but decided that the court had no personal jurisdiction over Father to grant the termination. The trial court denied Mother's petition. Because Child resided in New Mexico, the trial court concluded that it did have jurisdiction over custody issues. The trial court awarded sole legal custody to Mother. Mother appeals the trial court's denial of her termination petition for lack of jurisdiction.

DISCUSSION
{5} Mother argues that the trial court did, in fact, have jurisdiction over Father for the purpose of termination, either under New Mexico's Child Custody Jurisdiction Act (CCJA), NMSA 1978, §§ 40-10-1 to -24 (1981, as amended through 1989), or under an in rem or quasi in rem analysis. She appears to concede that the trial court did not otherwise have in personam jurisdiction over Father, whose actions did not fit within the long-arm statute and who has had no legally significant contact with the New Mexico forum. See generally International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (outlining the constitutional requirements for in personam jurisdiction); Federal Deposit Ins. Corp. v. Hiatt, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994) (outlining the requirements for in personam jurisdiction).

CCJA
{6} New Mexico adopted the CCJA in 1981 in an effort "to avoid jurisdictional competition, to promote cooperation among state courts, and to assure that custody litigation ordinarily takes place in the state with which the child and the family have the closest connection." Nelson v. Nelson, 1996-NMCA-015, ¶ 5, 121 N.M. 243, 910 P.2d 319. To this end, the CCJA grants jurisdiction to the district court to make a child custody determination under circumstances provided in Section 40-10-4. This section includes circumstances in which the child and a parent or contestant have significant connections with New Mexico, emergency situations, or when there is no other appropriate forum. See § 40-10-4(A).
{7} The "custody determination" that the CCJA allows the district court jurisdiction to make is defined as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights, but it does not include a decision relating to child support or any other monetary obligation of any person." Section 40-10-3. The termination aspect of this case is not, under the statutory definition, a custody case. The trial court expressly concluded that it had jurisdiction to determine the custody issue, and it granted sole legal custody to Mother.
{8} As Mother points out, other states have permitted jurisdiction under the CCJA in cases outside of the usual custody determination. See Gainey v. Olivo, 258 Ga. 640, 373 S.E.2d 4, 6 (1988); In re Adoption of Baby Girl B., 19 Kan.App.2d 283, 867 P.2d 1074, 1077-78 (1994); Foster v. Stein, 183 Mich.App. 424, 454 N.W.2d 244, 246 (1990); In re Steven C., 169 Wis.2d 727, 486 N.W.2d 572, 573-74 (Wis.Ct.App.1992). However, these cases cited by Mother are each distinguishable from the instant case. In each, adoption proceedings or termination of parental rights in conjunction with adoption proceedings were at issue. Here, the "actual physical possession and control of a child" was not at issue in the termination proceedings. Warman v. Warman, 294 Pa.Super. 285, 439 A.2d 1203, 1209 (1982) (stating that CCJA covers all determinations of issues of actual physical control and possession of a child). Nor did this termination petition seek to "ultimately determine whether a parent will retain custody of a child." In re Steven C., 486 N.W.2d at 573. The trial court instead concluded that it had jurisdiction to make a custody determination and did so in Mother's favor.
*988 {9} We agree with those courts that have held a straight termination proceeding, not involving custody, adoption, or other similar issues, to fall outside of the CCJA. For example, Utah has held that termination of parental rights proceedings are not "custody proceedings" under the Act. See In re R.N.J., 908 P.2d 345, 348 (Utah Ct.App.1995). In R.N.J., an adoptive father petitioned to annul the child's adoption or terminate his parental rights with respect to the child. See id. at 346. The mother argued that under Utah's CCJA, jurisdiction was properly in California, where the original divorce judgment issued. See id. at 348. The Utah CCJA's definitions of "custody determination" and "custody proceeding" are substantively identical to those in the New Mexico CCJA. See id.; § 40-10-3(B), (C). Although the terms of the CCJA were not clear as to whether termination proceedings were covered under its provisions, the Utah court reasoned that because termination proceedings were specifically provided for in separate statutes, those specific provisions, and not the CCJA addressed termination cases. See id. at 348-49.
{10} Under the facts of our case, we need not go so far as to decide whether there are termination cases involving adoption or other custody-related issues that are covered by the CCJA. Mother's petition is strictly in regard to termination. She acknowledged at the hearing that the termination was not sought in contemplation of adoption. Nor is any other custody matter related to the termination at issue. Mother contends that termination is necessary to save Child from "legal limbo." However, there is no issue at this time that requires termination to settle a custody-related question. Mother queries what would happen to Child in the event of her own death. We believe that the courts could adequately and fairly address that situation in the unfortunate event that it arises and we are disinclined under these facts to terminate Father's rights without a more applicable basis for jurisdiction than that which the CCJA provides.
{11} To the extent that Mother argues that this case presents a status adjudication over which no personal jurisdiction over the parties is required, we also disagree. Mother's argument to this effect relies on custody cases, and she urges this Court to extend the same rationale to termination proceedings. We are not inclined to do so, because this would unreasonably extend the rationale of the CCJA to a type of case that it was not intended to cover. The CCJA is concerned with the adjudication of custody issues in an efficient manner that promotes cooperation among states and the best interest of the child, see Section 40-10-2, goals which are not significantly advanced by termination of Father's parental rights under these circumstances.

In Rem or Quasi in Rem Jurisdiction
{12} Mother maintains that even if the CCJA does not comprehend the trial court's jurisdiction over Father, the trial court had in rem or quasi in rem jurisdiction. Quasi in rem jurisdiction is defined as "[t]hat which affects only the interest of particular persons in specific property as distinguished from proceedings in rem which determine interests in specific property as against the whole world." State ex rel. Hill v. District Court, 79 N.M. 33, 34, 439 P.2d 551, 552 (1968).
{13} Despite the fact that property cases and termination cases are not clearly analogous, Mother argues that, under similar logic to that underlying the CCJA, in personam jurisdiction is not necessary in termination cases. She cites two cases in support of this position. The only termination case that she cites is In re Appeal in Maricopa County, 25 Ariz.App. 333, 543 P.2d 454 (1976). That case differs factually from Mother's in that it is a case of termination in anticipation of adoption. See id. at 456.
{14} This Court has often referred to the fundamental importance of parental rights. See State ex rel. Children, Youth and Families Dept. v. T.J., R.W., & K.W., 1997-NMCA-021, ¶ 11, 123 N.M. 99, 934 P.2d 293 ("[T]he right to retain a parental relationship with a child is a fundamental right that merits strong protection."). The only concern as compelling in a case involving a child is the best interest of the child. See id. Given the importance of the parent's rights, in personam jurisdiction is ordinarily *989 required for termination. See In re Laurie R., 107 N.M. 529, 530-31, 760 P.2d 1295, 1296-97 (Ct.App.1988) (applying personal jurisdiction requirements as a prerequisite to termination of parental rights). As codified in the CCJA, custody cases can be excepted from the personal jurisdiction requirement in order to benefit the child. See § 40-10-4.
{15} While we are not necessarily averse to the possibility of extending in rem or CCJA jurisdiction in cases of termination in contemplation of adoption or in custody cases, where the child's best interest is clearly at issue, this case falls in neither of those categories. From the proceedings below, it appears that the motivation for termination concerns issues relating to the potential tort case and the possible judgment in that case. Under these circumstances, the policy underpinnings of any possible exception to personal jurisdiction in custody and adoption cases are not at work. We need not decide whether or to what extent we recognize an exception from the personal jurisdiction requirement when the residence and caretaking of a child is at issue, because that situation does not present itself under the facts of this case.

CONCLUSION
{16} We affirm.
{17} IT IS SO ORDERED.
APODACA and WECHSLER, JJ., concur.